UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

----------------------------------------------------------------- x
KYLE YOUMANS,                                         :
                                                      :
                                    Plaintiff,        :
                                                      :
                       v.                             :          22-CV-1650 (SFR)
                                                      :
CAPTAIN ROY, C/O FOUNTAIN,                            :
                                                      :
                                    Defendants.       :
----------------------------------------------------------------- x

**MEMORANDUM & ORDER**

Plaintiff Kyle Youmans filed a Complaint under 42 U.S.C. § 1983 alleging prison officials violated his rights under the U.S. Constitution and Connecticut state law while he was a pretrial detainee in Connecticut Department of Correction ("DOC") custody housed at the MacDougall-Walker Correctional Institution ("MWCI").[1] *See* Second Am. Compl., ECF No. 35 (operative complaint). After two initial review orders,[2] Youmans was permitted to proceed against two Defendants—Captain Roy and Correctional Officer Fountain—in their individual capacities. Initial Review Order, ECF No. 37, at 12. His claims include: (1) a Fourteenth Amendment substantive due process claim against Defendant Roy based on segregation conditions; (2) a Fourteenth Amendment substantive due process claim against Defendant

---

[1] Youmans was sentenced on January 14, 2022 and remains incarcerated. See DOC, Inmate Information, https://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=323250 (last visited September 23, 2025). I may take judicial notice of matters of public record. *See, e.g.*, *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006); *Kelley v. Quiros*, No. 3:22-cv-1425 (KAD), 2023 WL 1818545, at *2 n.1 (D. Conn. Feb. 8, 2023) (taking judicial notice of state prison website inmate locator information).

[2] This case was previously assigned to two other judges in this District. *See* Transfer Order, ECF No. 36 (transferring case from the Honorable Vanessa L. Bryant to the Honorable Michael P. Shea); Transfer Order, ECF No. 52 (transferring case to me).

Fountain based on excessive force; and (3) state law torts of negligence, false imprisonment, and intentional infliction of emotional distress against both Defendants. *Id.*

Defendants now move for summary judgment on all claims, asserting that Youmans failed to exhaust his administrative remedies before filing his Complaint, that his claims fail on the merits, and that, in any event, they are entitled to qualified immunity. *See* Mem. Supp. Mot. Summ. J. ("Defs.' Mem.") 1, ECF No. 49-1. I have reviewed the motion; Defendants' Local Rule 56(a)1 Statement ("Defs.' L.R. 56(a)1 St."), ECF No. 49-2; Plaintiff Kyle Youmans's Opposition to the motion ("Opp'n"), ECF No. 61; Youmans's Local Rule 56(a)2 Statement ("Pl.'s L.R. 56(a)2 St."), ECF Nos. 62, 63; and the record in this matter.

For the following reasons, Defendants' Motion for Summary Judgment, ECF No. 49, is granted in part and denied without prejudice in part.

## I.    **BACKGROUND**

### A.    **Factual Background**

Defendants Roy and Fountain worked at MWCI while Youmans was housed there. Pl.'s L.R. 56(b)2 St. ¶¶ 1-2.[3]

Beginning in mid-May 2021, Youmans was held on chronic disciplinary status. *See* Roy Decl. 2, ECF No. 49-9. Defendants assert that on July 13, 2021, homemade alcohol was found in Youmans' cell and new gang insignia tattoos were found on his person. Defs.' L.R. 56(a)1 St. ¶ 11; Pl.'s L.R. 56(a)2 St. ¶ 11 (denying Defendants' statement as "inaccurate and

---

[3] I will reference paragraph numbers when citing Defendants' Local Rule 56(a)1 and Youmans' Local Rule 56(a)2 Statements. When Youmans has admitted a paragraph, I will cite only to Youmans' Statement. For all other sources, I will reference the page number generated by ECF.

irrelevant"). From there, and because of the newly discovered tattoos, Youmans was taken to Admitting and Processing for an updated body map. Pl.'s L.R. 56(b)(1) St. ¶ 12.

After some delay, Fountain escorted Youmans back to the chronic discipline unit using full body restraints. Defs.' L.R. 56(a)1 St. ¶ 14; Pl.'s L.R. 56(a)2 St. ¶ 14 (denying this as "inaccurate and incomplete"); Youmans Decl. 2, ECF No. 64 (explaining that full body restraints means that Youmans was handcuffed from behind, with a tether chain connected to his leg shackles). The parties dispute whether force was used: Defendants assert that no force was used or was necessary, while Youmans responds that the use of full body mechanical restraints was a use of force. Defs.' L.R. 56(a)1 St. ¶ 15; Pl.'s L.R. 56(a)2 St. ¶ 15. Defendants assert that Youmans "did not complain of or report any injuries." Def. L.R. 56(a)1 St. ¶ 15. The parties disagree about whether Youmans "was subjected to harsh or uncivilized conduct," with Youmans saying that the restraints were "too tight" and caused him pain. Defs.' L.R. 56(a)1 St. ¶ 15; Pl.'s L.R. 56(a)2 St. ¶ 15; Youmans Decl. 2, ECF No. 64. Youmans says Fountain told him to "deal with it." *Id.*

Fountain brought Youmans to a different cell, where he remained for eight days.[4] Pl.'s L.R. 56(b)2 St. ¶ 18. It is undisputed that Youmans did not receive a disciplinary ticket for the discoveries in his cell on July 13, 2021. *See* Defs.' L.R. 56(a)1 St. ¶¶ 16, 19; Pl.'s L.R. 56(b)2 St. ¶¶ 16, 19 (denying Defendants' claim of mistake, but agreeing that Youmans did not receive a disciplinary ticket); Youmans Decl. 4, ECF No. 64. Youmans was held in the other cell for

---

[4] Both Youmans and Defendants repeatedly allege that he was held in a different cell for "eight days." Am. Compl. ¶ 22; Defs.' L.R. 56(a)1 St. ¶ 20. Youmans says he was held in the cell from July 13 to July 21, Youmans Decl. 5, ECF No. 64, whereas Defendants say he was held from July 13 to July 22, Defs.' L.R. 56(a)1 St. ¶¶ 16, 18. The parties nowhere explain this discrepancy, but for the purpose of this motion only I will accept the agreed-upon "eight day" period.

eight days despite receiving no disciplinary report or restrictive housing status report. Pl.'s L.R. 56(b)2 St. ¶¶ 16-20; Youmans Decl. 4, ECF No. 64.

Youmans notified Roy on July 22, 2021 that he had not received a disciplinary report, and Youmans was released back to his original cell with Defendant Roy "verbally acknowledg[ing] the administrative error." Defs.' L.R. 56(a)1 St. ¶¶ 18-19; Pl.'s L.R. 56(a)2 St. ¶¶ 18-19 (disputing Defendants' characterization of the error as a "mistake"); Youmans Decl. 4, ECF No. 64.

Youmans asserts that he attempted to alert Roy to this error several times during those eight days, but "Captain Roy refused to talk to me and he simply disregarded my complaints and my requests for correction[]." Youmans Decl. 4-5, ECF No. 64. Defendants assert that during the eight days, Youmans was "eligible for numerous privileges, including one hour "of recreation five days per week, one 15-minute social phone call per week, legal visits and calls consistent with general population inmates, two 30-minute visit[s] per week with immediate family members, and allowed to keep at least five pieces of mail [] in his cell." Defs.' L.R. 56(a)1 St. ¶ 21. According to Defendants, Youmans' "standing in the segregation program never changed" during this period. *Id.* ¶ 20. Youmans asserts he was in "punitive segregation" for these eight days, ECF No. 62, at 2, and lost privileges, including phone use, mail, and visitation. Second Am. Compl. 3, ECF No. 35; Pl.'s L.R. 56(a)2 St. ¶¶ 21, 25; Youmans Decl. 4, ECF No. 64. Youmans maintains that Roy "knew that I suffered, sever[e]ly, during my (8) days on [punitive segregation] status with practically nothing by way of privileges, or even a basic shower or recreation." Youmans Decl. 6, ECF No. 64.

After this incident, Youmans submitted two Level 1 Grievances and one Level 2 Appeal that relate to the claims currently before me.[5]

Youmans filed a Level 1 Grievance (IGP #137-22-057), dated August 16, 2021, which was received by prison staff on August 17, 2021. Pl.'s L.R. 56(a)2 St. ¶ 41; ECF No. 49-4, at 5-7. This grievance concerned Youman's placement in segregation and his excessive force claim. ECF No. 49-4, at 5-7. That grievance was rejected on September 2, 2021, for failure to file "within 30 calendar days of the occurrence or discovery of the cause of the Grievance." *Id*. at 6. A checkbox was marked on the form indicating that "[t]his decision is not subject to further appeal." *Id.*

Youmans filed another Level 1 Grievance (IGP #137-22-088), dated September 3, 2021, which was received by prison staff on September 14, 2021. Pl.'s L.R. 56(b)2 St. ¶ 43; ECF No. 49-4, at 14-16. This grievance concerned Youmans' placement in segregation and his excessive force claim. ECF No. 49-4, at 15-16. This grievance was denied; the response

---

[5] In addition, during this time period, Youmans also filed two Level 1 Grievances relating to matters that the court dismissed upon initial review. Youmans filed a grievance (IGP #137-22-039), dated July 26, 2021. Pl.'s L.R. 56(b)2 St. ¶ 40; ECF No. 49-4, at 2-3. That grievance was rejected on September 9, 2021, with the "Reason" for denial listing particular procedural requirements (including a failure to file administrative remedy requests separately, and a failure to seek informal resolution prior to filing a grievance). ECF No. 49-4, at 3. The "Reason" also included specific instructions on how to correct the defects in the grievance: "Per A.D. 9.6 . . . the inmate shall have (5) calendar days to correct the defect(s) and resubmit a request for administrative remedy." *Id*. This grievance does not concern Youman's placement in segregation or his excessive force claim and instead discusses his issues with the shower strip search policies, which, after initial review, the court did not allow to proceed. ECF No. 49-4, at 2-3; Initial Review Order, ECF No. 37, at 9-10.

        Youmans filed another grievance (IGP #137-22-076), dated September 6, 2021. Pl.'s L.R. 56(b)2 St. ¶ 42; ECF No. 49-4, at 8-10. That grievance was rejected on November 9, 2021, for failure to file within 30 calendar days of the incident. *Id.* This grievance also relates to concerns about the shower strip search practices, which, after initial review, the court did not allow to proceed. ECF No. 49-4, at 8-10; Initial Review Order, ECF No. 37, at 9-10.

informed Youmans that he had been on restricted status and managed appropriately. *Id.* at 15. In addition, the response stated: "please keep in mind inmates don't dictate staff discipline or training." *Id.* A checkbox was marked on the form, indicating that "[t]his matter may be appealed within 5 calendar days." *Id.*

Youmans filed a Level 2 Appeal (IGP #137-22-088), dated December 22, 2021, which was received by prison staff on December 23, 2021. Pl.'s L.R. 56(b)2 St. ¶ 44; ECF No. 49-4, at 12-13. This grievance was an appeal of Youmans' September 14, 2021 Level 1 Grievance. ECF No. 49-4, at 12-13. That appeal was denied on January 21, 2022. *Id.* at 13. The denial explained:

> You are appealing a level one grievance . . . regarding Restrictive Housing Unit placement at M.W.C.I. As you acknowledge, on 7/13/21 you were escorted to A&P to have photographs of tattoos taken. While there, a shakedown of your cell was completed and homemade alcohol (pruno) was discovered . . . . Due to an oversight and procedural error on our behalf, a disciplinary report was not issued within the appropriate timeframe, nor was a proper incident report package created. Upon discovery, you were then released back to your previous cell and not issued any disciplinary action as a result of the discovery of contraband. You request for staff to be "fired or demoted" will not be granted. Your level 2 grievance appeal is denied.

*Id.* The form included a box checked that said: "This decision is not subject to further appeal." *Id.*

### B.    Procedural History

Youmans filed this action on December 27, 2022. Compl., ECF No. 1. His Motion for Leave to Proceed *in forma pauperis* was granted on January 17, 2023, and the court entered an Initial Review Order dismissing some claims on January 31, 2023. ECF Nos. 10, 11. Defendants filed a Motion to Dismiss on March 10, 2023, which the Court denied on April 26, 2023. ECF Nos. 15, 18. Youmans moved to amend his complaint on November 6, 2023, and

the court granted that motion on November 9, 2023, entering another Initial Review Order on December 4, 2023. ECF Nos. 28, 35, 37. Defendants filed a Motion for Summary Judgment on December 10, 2024. ECF No. 49. The case was transferred to me on January 6, 2025. ECF No. 52. Youmans filed his opposition on June 4, 2025, and a supplemental memorandum on September 8, 2025, to which Defendants objected on September 10, 2025. ECF Nos. 61, 65, 66.

## II.    **LEGAL STANDARD**

Courts will grant a motion for summary judgment only if the record shows no genuine issue as to any material fact, and the movant is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine dispute of material fact 'exists for summary judgment purposes where the evidence, viewed in the light most favorable to the nonmoving party, is such that a reasonable jury could decide in that party's favor.'" *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 843 (2d Cir. 2013) (quoting *Guilbert v. Gardner*, 480 F.3d 140, 145 (2d Cir. 2007)).

The moving party bears the initial burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The non-moving party may defeat the motion by producing sufficient specific facts to establish that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 247-48. The moving party may satisfy this burden by pointing out to the district court an absence of evidence to support the non-moving party's case. *See PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (per curiam).

When a motion for summary judgment is supported by documentary evidence and sworn affidavits and "demonstrates the absence of a genuine issue of material fact," the nonmoving party must do more than vaguely assert the existence of some unspecified disputed material facts or "rely on conclusory allegations or unsubstantiated speculation*." Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (citation omitted). The party opposing the motion for summary judgment "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Id.*; *Pelletier v. Armstrong*, 3:99-cv-1559 (HBF), 2007 WL 685181, at *7 (D. Conn. Mar. 2, 2007)

When deciding a motion for summary judgment, a court may review the entire record, including the pleadings, depositions, answers to interrogatories, admissions, affidavits, and any other evidence on file to determine whether there is any genuine issue of material fact. *See* Fed. R. Civ. P. 56(c). In reviewing the record, courts "must construe the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Gary Friedrich Enters., LLC v. Marvel Characters, Inc.*, 716 F.3d 302, 312 (2d Cir. 2013) (citation omitted). If there is any evidence in the record from which a reasonable factual inference could be drawn in favor of the non-moving party for the issue on which summary judgment is sought, then summary judgment is improper. *See Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc.*, 391 F.3d 77, 83 (2d Cir. 2004).

## III.    DISCUSSION

Defendants move for summary judgment on three principal bases: (1) Youmans failed to exhaust his administrative remedies before filing suit; (2) Youmans failed to demonstrate that a constitutional violation occurred; (3) Youmans' state law claims fail as a matter of law; and (4) Defendants are entitled to qualified immunity. Defs.' Mem., ECF No. 49-1, at 1.

A.      **Exhaustion**

The Prison Litigation Reform Act ("PLRA") requires a prisoner pursuing a federal lawsuit to exhaust available administrative remedies before a court may hear his case. *See* 42 U.S.C. § 1997e(a) (providing that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."); *see also Ross v. Blake*, 578 U.S. 632, 635 (2016). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

Prisoners "cannot satisfy the PLRA's exhaustion requirement solely by . . . making informal complaints" to prison officials. *Macias v. Zenk*, 495 F.3d 37, 44 (2d Cir. 2007); *see also Day v. Chaplin*, 354 F. App'x 472, 474 (2d Cir. 2009) (summary order) (affirming grant of summary judgment for failure to exhaust administrative remedies and stating that informal letters sent to prison officials "do not conform to the proper administrative remedy procedures"). The PLRA requires "proper exhaustion"; the incarcerated individual must use all steps required by the administrative review process applicable to the institution in which he is confined and do so properly. *Jones v. Bock*, 549 U.S. 199, 217-18 (2007) (citing *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)); *see also Amador v. Andrews*, 655 F.3d 89, 96 (2d Cir. 2011) (exhaustion necessitates "using all steps that the agency holds out, and doing so properly") (quoting *Woodford*, 548 U.S. at 90). "Exhaustion is mandatory—unexhausted claims may not be pursued in federal court." *Amador*, 655 F.3d at 96; *see also Jones*, 549 U.S. at 211 ("There

is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court.").

Special circumstances will not relieve a prisoner of his obligation to comply with the exhaustion requirement. An individual's failure to exhaust administrative remedies is only excusable if the remedies are in fact unavailable. *See Ross*, 578 U.S. at 642. The Supreme Court has determined that "availability" in this context means that "an inmate is required to exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of." *Id.* (internal quotation marks and citation omitted).

The *Ross* court identified three circumstances in which a court may find that internal administrative remedies are not available to prisoners under the PLRA. *Id.* at 643-44. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* at 643. "Next, an administrative remedy scheme might be so opaque that it becomes, practically speaking, incapable of use." *Id.* Finally, an administrative remedy is not "available" when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 644. The Second Circuit has noted that "the three circumstances discussed in *Ross* do not appear to be exhaustive." *Williams v. Priatno*, 829 F.3d 118, 123 n.2 (2d Cir. 2016). In considering the issue of availability, however, the court is guided by these illustrations. *See Mena v. City of New York*, No. 13-cv-2430 (RJS), 2016 WL 3948100, at *4 (S.D.N.Y. July 19, 2016).

Exhaustion of administrative remedies is an affirmative defense. *Perttu v. Richards*, 605 U.S. 460, 469 (2025). The defendant bears the burden of proof. *See Jones*, 549 U.S. at

216. Once the defendant provides reliable evidence that administrative remedies were not exhausted before the plaintiff commenced the action, the plaintiff must present evidence showing that he did exhaust his administrative remedies or establish that administrative remedy procedures were not available to him. *See Smith v. Kelly*, 985 F. Supp. 2d 275, 284 (N.D.N.Y. 2013) (stating that "once a defendant has adduced reliable evidence that administrative remedies were available to the plaintiff and that the plaintiff nevertheless failed to exhaust those administrative remedies, the plaintiff must then 'counter' the defendant's assertion by showing exhaustion [or] unavailability").

### 1.    DOC Grievance Procedures

DOC "requires inmates to submit grievances in accordance with Administrative Directive 9.6 ('AD 9.6')," which provides procedural rules and deadlines for processing general inmate requests. *Riles v. Buchanan*, 656 F. App'x 577, 579 (2d Cir. 2016); *see also Gaston v. Doe*, No. 3:19-cv-3(AWT), 2021 WL 66434, at *3 (D. Conn. Jan. 7, 2021) ("The general inmate grievance procedure is set forth in Administrative Directive 9.6 and can be found at portal.ct.gov/DOC."). "The Court can take judicial notice of the State of Connecticut Administrative Directives that are found on the Department of Correction's website." *Barfield v. Milling*, No. 3:14-cv-914(VAB), 2015 WL 1737671, at *3 n.1 (D. Conn. Apr. 16, 2015).

Administrative Directive 9.6(6) requires an aggrieved individual to first seek informal resolution prior to filing a grievance. A.D. 9.6(6)(a)(i)(1).[6] If "the verbal communication does

---

[6] Because Youmans's allegations relate to facts starting in May 2021, the version of A.D. 9.6 applicable to Youmans's claim is the version of A.D. 9.6 in effect today, and Defendants attach a copy of this version to their Motion for Summary Judgment. *See* ECF No. 49-3. This version, with an effective date of April 30, 2021, is also available on the DOC's website. *See* DOC, Administrative Directive Chapter 9.6, https://portal.ct.gov/-

not resolve the issue," or the individual chooses not to attempt to resolve the issue verbally, the individual must submit a written request to an appropriate staff member on CN 9601, Inmate Request Form. A.D. 9.6(6)(a)(i)(2)(a), 9.6(6)(a)(i)(3). "A response to the inmate shall be made within 15 business days from receipt of the written request." A.D. 9.6(6)(a)(i)(8).

"An inmate shall file a Grievance if the inmate is not satisfied with the informal resolution offered." *Id.* 9.6(6)(a)(ii)(1). A Level 1 Grievance using a CN 9602 form must be filed within thirty calendar days from the date of "the occurrence or discovery of the cause of the Grievance," *see* A.D. 9.6(6)(a)(ii)(4), and shall attach a "CN 9601 Inmate Request form, containing the appropriate staff member's response." A.D. 9.6(6)(a)(ii)(2). Furthermore:

> If the inmate was unable to obtain a blank CN 9601, Inmate Request Form, or did not receive a timely response to the inmate request, or for a similar valid reason, the inmate shall include an explanation indicating why CN 9601, Inmate Request Form, is not attached to the CN 9602, Inmate Grievance Form- Level 1. The inmate shall include the name of the staff member whom the informal resolution was addressed [sic] and the date of the attempt.

A.D. 9.6(6)(a)(ii)(2)(a).

Staff must provide a written response within thirty days after the Level 1 Grievance is filed. *See* A.D. 9.6(6)(b)(i)(3). Level 1 Grievances can be issued with the following dispositions: rejected; denied; upheld in part; upheld; or withdrawn. A.D. 9.6(6)(3)(d), (h)-(k) The Administrative Directives define "denied" as a "[t]he request for administrative remedy is without merit." AD 9.6(3)(d). In addition, "rejected" is defined as "[t]he request for administrative remedy fails to satisfy the procedural requirements of the particular requested remedy." A.D. 9.6(3)(h).

---

/media/doc/pdf/ad/ad9/ad_0906_effective_04302021.pdf?rev=b9edceb79dbd4cbdb9dd09297664 d04a&hash=E8BE08DD74CEE3C3C23D1FCB63DDAE0E (last visited July 29, 2025).

Upon receipt, the Level 1 Grievance is reviewed by staff for compliance with sections 5 and 6 of the Administrative Directives. A.D. 9.6(6)(b)(i)(2). If the grievance is in compliance, the "Grievance shall be processed." A.D. 9.6(6)(b)(i)(2)(a). If the grievance is not in compliance, then the grievance "shall be rejected and the inmate shall be notified." A.D. 9.6(6)(b)(i)(2)(a)(i). "If the failure to meet the procedural requirement(s) can be corrected the inmate shall have (5) calendar days to correct, [sic] the defect(s) and resubmit a request for administrative remedy." A.D. 9.6(6)(b)(i)(2)(a)(i)(1). "If the resubmitted request for administrative remedy does not correct the defect(s), the request for administrative remedy shall be rejected and not subject to further appeal." A.D. 9.6(6)(b)(i)(2)(a)(i)(2).

The individual may appeal the disposition of a Level 1 Grievance by utilizing a CN 9604, Inmate Grievance Appeal Form – Level 2, within five calendar days after receiving the Level 1 decision. *See* A.D. 9.6(6)(b)(ii)(1). Prison officials must respond to the Level 2 appeal within thirty business days. *See* A.D. 9.6(6)(b)(ii)(4). Level 3 review is restricted to challenges to department policy, the integrity of the grievance procedure, or Level 2 appeals to which there has not been a timely response. *See* A.D. 9.6(6)(b)(iii)(1)(a)–(c). A Level 3 appeal must be filed within five calendar days from the individual's receipt of the decision on the Level 2 appeal. *See* A.D. 9.6(6)(b)(iii)(2). Level 3 review is the final level of review of all grievances that meet the requirements of the Administrative Directives. *See* A.D. 9.6(6)(b)(iii)(5).

### 2. Summary Judgment on Exhaustion Grounds is Denied

Defendants argue that Youmans failed to properly exhaust his administrative remedies because he filed his first relevant administrative grievance more than thirty days after July 13, 2021—the date he was brought in restraints to the segregation cell. Defs.' Mem., ECF No. 49-1, at 10.

Youmans filed two Level 1 Grievances and one Level 2 Appeal that relate to the subject of this litigation: (1) Youmans's Level 1 Grievance (IGP #137-22-057), dated August 16, 2021 and received by staff on August 17, 2021, ECF No. 49-4, at 5-7; (2) Youmans's Level 1 Grievance (IGP #137-22-088), dated September 3, 2021 and received by staff on September 14, 2021, *id.* at 14-16; and (3) Youmans's Level 2 Appeal (IGP #137-22-088), dated December 22, 2021 and received by staff on December 29, 2021, *id.* at 12-13.

Here, the evidence shows that Youmans was in segregation from July 13, 2021, until July 22, 2021, and his Level 1 Grievance was received by staff on August 17, 2021. Defs.' L.R. 56(a)1 St. ¶¶ 18-20. The evidence also shows that Youmans verbally expressed to Defendants that he was confused about why he was housed in segregation during that time. Defs.' L.R. 56(a)1 St. ¶¶ 18-19, 41; Pl.'s L.R. 56(a)2 St. ¶¶ 18-19, 41 (disputing Defendants' characterization of the error as a "mistake"); Youmans Decl. 4-5, ECF No. 64.

In my view, a grievance submitted by August 21, 2021, would be timely as an original grievance regarding the segregation claim. *See* A.D. 9.6(a)(ii)(4) (requiring grievance to be filed "within 30 calendar days of the occurrence or discovery of the cause of the Grievance"); *see Harvin v. Cheney*, No. 3:23CV328 (MPS), 2025 WL 1616682, at *14 (D. Conn. June 20, 2025) ("Under Directive 9.6(6)(a)(ii)(4), [the plaintiff] was required to file his grievance within thirty calendar days from the date of the occurrence or discovery of the cause of the grievance. [The plaintiff] asserted he was subject to inadequate safety measures while housed with Inmate 1 *from August 3 to at least September 2, 2021* (thirty days); *thus, he had until at least October 2, 2021 to file a timely grievance* in compliance with Directive 9.6(6)(a)(ii)(4), and therefore, his grievance marked as received on September 27, 2021, may be considered timely filed.") (emphases added). And because Youmans' excessive force claim related to his

14

restrictive status classification (for example, whether he was in chronic discipline or administrative detention status), he did not yet have "discovery of the cause of the Grievance" on July 13, 2021. Thus, Youmans's August 17, 2021 grievance was timely.

Moreover, although Youmans did not appeal the denial of the August 17, 2021 grievance, the decision rejecting his grievance as untimely expressly noted "[t]his decision is not subject to further appeal." ECF 49-4, at 6. Construed most favorably to Youmans as the nonmoving party, the record reflects that Youmans followed the directive in the grievance rejection, but his remedies for this claim operated as "a simple dead end." *See Ross*, 578 at 643 (noting example where "a prison handbook directs inmates to submit their grievances to a particular administrative office—but in practice that office disclaims the capacity to consider those petitions"). In *Harvin*, staff also incorrectly rejected the plaintiff's grievance as untimely and indicated he was not permitted to appeal the decision. 2025 WL 1616682, at *14. There, the court denied summary judgment, concluding that the evidence, construed most favorably to the plaintiff, suggested his "remedies for this claim operated as a 'simple dead end.'" *Id.* I therefore conclude that Youmans did file a timely Level 1 Grievance, and that grievance was rejected in a manner that short-circuited his ability to meaningfully pursue his administrative remedies.

In any event, however, Youmans exhausted his claims through a subsequently submitted Level 1 Grievance and Level 2 Appeal. On September 3, 2021, Youmans filed a Level 1 Grievance, which was received by staff on September 14, 2021, concerning his placement in segregation and excessive force. ECF No. 49-4, at 15. Although the grievance was filed more than 30 days after his discovery of the cause of the grievance, prison staff did not "reject" the grievance on procedural grounds as untimely but instead "denied" the

grievance on the merits. *Compare* A.D. 9.6(3)(h) (defining "rejected" as "[t]he request for administrative remedy fails to satisfy the procedural requirements of the particular requested remedy"), *with* AD 9.6(3)(d) (defining "denied" as a "[t]he request for administrative remedy is without merit"). The staff response to this grievance made no mention of a procedural error with the grievance, instead informing Youmans that he had been managed appropriately while on restricted status and he could not dictate staff discipline or training. ECF No. 49-4, at 15. The response indicated that Youmans was permitted to appeal, *id.*, and he thereafter filed a Level 2 Appeal form, ECF No. 49-4, at 13. Although the Administrative Directives require Level 2 Appeals to be submitted within five calendar days of the Level 1 response, the decision denying the appeal did not state that the appeal was untimely. *Id*. Rather, the Level 2 decision determined Youmans' appeal was without merit and informed him that his request for staff to be "fired or demoted" would not be granted. *Id.*

The Second Circuit has held that the PLRA's exhaustion requirement is met where prison officials accept and decide on the merits an untimely grievance. *See Hill v. Curcione*, 657 F.3d 116, 125 (2d Cir. 2011) ("Today, we join the Seventh and Tenth Circuits and hold that the exhaustion requirement of the PLRA is satisfied by an untimely filing of a grievance if it is accepted and decided on the merits by the appropriate prison authority."); *Riccardo v. Rausch*, 375 F.3d 521, 524 (7th Cir. 2004) (stating that "when a state treats a filing as timely and resolves it on the merits, the federal judiciary will not second-guess that action, for the grievance has served its function of alerting the state and inviting corrective action"); *Koram v. CT Dept of Corrs.*, No. 3:23-CV-729 (KAD), 2024 WL 3898681, at *6 (D. Conn. Aug. 22, 2024) ("The PLRA exhaustion requirement may be satisfied where 'prison officials address and resolve a grievance on the merits despite the fact that it might not comply with procedural

rules.'"); *Castillo v. Hogan*, No. 3:14-cv-1166 (VAB), 2018 WL 1582514, at *7 (D. Conn. Mar. 31, 2018) ("Accordingly, because the reviewing officials chose to reach the merits of Mr. Castillo's retaliation claim as asserted in his January 3, 2013 grievance and appeal of the grievance, rather than deny it on procedural grounds, the grievance is considered properly filed and the exhaustion requirement is satisfied.").

Youmans' Level 1 Grievance submitted on September 3, 2021 was untimely, and his Level 2 Appeal of that grievance was also untimely. However, because prison officials resolved the grievance and appeal on the merits, Youmans has exhausted his administrative remedies. A procedural ground for rejecting a grievance not previously asserted cannot now be used to deem Youmans' claims unexhausted.

Accordingly, Defendants' motion for summary judgment on the grounds of failure to exhaust is denied.

### B.    Constitutional Claims

Having concluded that Youmans properly exhausted his claims, I now address his constitutional claims.

To start, the government argues that Youmans's claims must be dismissed because he alleges no physical injuries, and the PLRA requires a plaintiff to show physical injury for a suit to proceed. *See* 42 U.S.C. § 1997e(e); Defs.' Mem. 22-23. Section 1997e(e) provides:

> No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act (as defined in section 2246 of Title 18).

*Id.* The Second Circuit, however, has not interpreted section 1997e(e) as broadly as Defendants suggest. Instead, the court has interpreted that section as barring "only awards of compensatory

damages, not as barring nominal damages, punitive damages, or injunctive relief." *Walker v. Schult*, 45 F.4th 598, 612 (2d Cir. 2022); *see also Clark v. Quiros*, 693 F. Supp. 3d 254, 301 (D. Conn. 2023).

Here, even if Youmans fails to show he suffered a physical injury, Youmans seeks relief beyond just compensatory damages, and so section 1997e(e) does not bar his suit. Although his claims of injunctive and declaratory relief were dismissed, *see* Initial Review Order, ECF No. 37, at 5, he also seeks punitive damages, *see* Second Am. Compl., ECF No. 35, at 4.

Section 1997e(e) is therefore not dispositive of his claims, and I move to the substance of Youmans's constitutional claims.

### 1. Fourteenth Amendment Substantive Due Process Claim Against Defendant Fountain

Youmans's substantive due process claim against Defendant Fountain relates to conduct that he asserts amounted to excessive force: namely, Fountain's use of full body restraints in escorting Youmans from Admitting and Processing to his cell in segregation.

Pretrial detainees are protected from "the use of excessive force that amounts to punishment." *Frost v. New York City Police Dep't*, 980 F.3d 231, 251-52 (2d Cir. 2020) (quoting *Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989)). In considering whether an official used such force, "the factfinder must apply an 'objective reasonableness' standard." *Id.* at 252 (quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015)).

"[O]bjective reasonableness turns on the 'facts and circumstances of each particular case.'" *Kingsley*, 576 U.S. at 397 (quoting *Graham,* 490 U.S. at 396). "A court must make this determination from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." *Id.* "A court must also account

for the 'legitimate interests that stem from [the government's] need to manage the facility in which the individual is detained,' appropriately deferring to 'policies and practices that in th[e] judgment' of jail officials 'are needed to preserve internal order and discipline and to maintain institutional security.'" *Id.* (quoting *Bell v. Wolfish,* 441 U.S. 520, 540 (1979)).

That said, "[a]n officer's actions can amount to punishment if they are taken with 'an expressed intent to punish.'" *Frost*, 980 F.3d at 252 (quoting *Wolfish,* 441 U.S. at 538). "But even 'in the absence of an expressed intent to punish, a pretrial detainee can nevertheless prevail by showing that the actions are not rationally related to a legitimate nonpunitive governmental purpose or that the actions appear excessive in relation to that purpose.'" *Id*. (quoting *Kingsley*, 576 U.S. at 398).

Youmans recounts that Defendant Fountain escorted him on July 13, 2021 from Admitting and Processing to his cell in segregation. Youmans Decl. 2, ECF No. 64. In escorting him, Fountain used full restraints, meaning that Youmans was handcuffed from behind, with a tether chain connected to his leg shackles. *Id* . Although Youmans does not deny that he was on chronic disciplinary status, *see id.* at 3, he argues that no Administrative Directive authorized Fountain to place him on full restraints, *id.*

Defendants assert that "[i]nmates housed at MWCI with a chronic discipline status are routinely escorted in full restraints." Defs.' Mem. 18. In support of this statement, Defendants cite to various exhibits they attach, including a version of Administrative Directive 9.4 that was in effect from 2009 to 2016. However, it appears that the version of the Directive that

applies to the events at issue in this case has an effective date of June 16, 2016.[7] Youmans did append the correct version to his declaration, but he did not include the forms and attachments, which appear to contain the relevant information regarding the conditions of confinement for individuals on different forms of restrictive status. *See* Youmans' Decl., Ex. A, ECF 64, at 13-32.[8] The full Administrative Directive 9.4 applicable to Youmans's claim in 2021 is not on the Department of Correction website.

Because Defendants attached an incorrect version of Administrative Directive 9.4 to their motion, and because Youmans did not attach the correct forms and attachments regarding the use of full restraints for a prisoner on chronic discipline status, I cannot evaluate Defendants' claim that use of full restraints was commonplace for individuals on chronic discipline status. This information bears on my analysis of whether Fountain used full restraints in such a manner that suggests his "actions are not rationally related to a legitimate nonpunitive governmental purpose or that the actions appear excessive in relation to that purpose." *Frost*, 980 F.3d at 252 (quoting *Kingsley*, 576 U.S. at 398).

Fed. R. Civ. P. 56(e) describes the actions a court may take when "a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact." In such instances, a court may:

(1) give an opportunity to properly support or address the fact;

---

[7] The 2016 version was later superseded by the version in effect today, which has an effective date of April 21, 2023. *See* DOC, Administrative Directive 9.4, available at https://portal.ct.gov/-/media/doc/pdf/ad/ad0904def.pdf?rev=c74067b1ba8c41 63a63f73bc2d3b111e&hash=629DAFB01C69A364A9BA15AE3BBE8208 (noting that the current Administrative Directive supersedes "Restrictive Status, dated 06/16/2016").

[8] Youmans also supplies Administrative Directive 6.5, which discusses the use of restraints and has an effective date of February 13, 2013. However, it is unclear if the version Youmans attaches was in effect at the time of the incident.

(2) consider the fact undisputed for purposes of the motion;
(3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it; or
(4) issue any other appropriate order.

Fed. R. Civ. P. 56(e)(1)-(4). The Advisory Committee has counseled district courts that the "choice among possible orders should be designed to encourage proper presentation of the record." Fed. R. Civ. P. 56, advisory committee note to 2010 amendment. *See Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373 F.3d 241, 242 (2d Cir. 2004) ("Even when a motion for summary judgment is unopposed, the district court is not relieved of its duty to decide whether the movant is entitled to judgment as a matter of law."); *Jackson v. Fed. Express*, 766 F.3d 189, 194 (2d Cir. 2014) ("Before summary judgment may be entered, the district court must ensure that each statement of material fact is supported by record evidence sufficient to satisfy the movant's burden of production even if the statement is unopposed."); *Giannullo v. City of New York*, 322 F.3d 139, 143 n.5 (2d Cir. 2003) (recognizing that failing to verify uncontested assertions in a movant's statement of facts "would derogate the truth-finding functions of the judicial process by substituting convenience for facts"); *CIT Bank, N.A. v. Howard*, No. 14-CV-7470 (SLT) (SMG), 2016 WL 6330406, at *7-8 (E.D.N.Y. Oct. 27, 2016) (denying without prejudice motion for summary judgment where defects in motion could conceivably be cured by refiling).

I therefore DENY without prejudice Defendants' motion for summary judgment as to the Fourteenth Amendment substantive due process claim against Defendant Fountain. Defendants may refile this motion, incorporating by reference any prior material, and including the applicable versions of Administrative Directives 6.5 and 9.4.

### 2. Fourteenth Amendment Substantive Due Process Claim Against Defendant Roy

Youmans argues that Defendant Roy violated his Fourteenth Amendment substantive due process rights through his actions of confining Youmans to segregation, resulting in Youmans's loss of privileges without an antecedent disciplinary report.

"The touchstone of due process is protection of the individual against arbitrary action of government." *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974). Detainees in particular "may not be punished prior to an adjudication of guilt in accordance with due process of law." *Almighty Supreme Born Allah v. Milling*, 876 F.3d 48, 55 (2d Cir. 2017) (quoting *Wolfish,* 441 U.S. at 535).

Analyzing restrictions imposed on detainees requires deciding "whether the [restriction] is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose.'" *Id.* (quoting *Wolfish,* 441 U.S. at 538). Save some evidence of an intent to punish, "that determination generally will turn on 'whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned.'" *Id*. (quoting *Wolfish,* 441 U.S. at 538). This means that "if a restriction or condition is not reasonably related to a legitimate goal—if it is arbitrary or purposeless—a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees.'" *Id.* (quoting *Wolfish,* 441 U.S. at 539). For example, the Second Circuit has "found measures similar to Administrative Segregation not to violate substantive due process where prison officials subjected pretrial detainees to such measures in response to

specific evidence that those detainees posed a risk to institutional security, and where the measures were not excessive in relation to that purpose." *Id*. at 55-56.

The parties do not dispute that Youmans was moved to a different cell for eight days and he never received a disciplinary report. Pl.'s L.R. 56(b)2 St. ¶¶ 16, 19; Youmans Decl. 4, ECF No. 64. Youmans asserts he was held in punitive segregation during this period and lost privileges; he alleges that he was unable to use the phone, send or receive mail, receive visitors, or "possess" his legal material, although he does not precisely allege whether and how these privileges were different than those he had before he was moved to a new cell. Second Am. Compl. 3, ECF No. 35; Pl.'s L.R. 56(a)2 St. ¶¶ 21, 25; Youmans Decl. 4, ECF No. 64. Youmans asserts Roy knew he was suffering during this time in punitive segregation with "practically nothing by way of privileges." Youmans Decl. 6, ECF No. 64.

In support of their description of Youmans' privileges during these eight days, Defendants cite to an Administrative Directive that was not in effect at the time of the relevant events. *See* Defs.' L.R. 56(a)1 St. ¶ 21.[9] The outdated Administrative Directive provided by Defendants lists different privileges depending on a person's "Restrictive Housing Status" (i.e., Administrative Detention, Chronic Discipline, Administrative Segregation, Punitive Segregation). *See, e.g.,* ECF No. 49-9, at 40-41, 42-43. Defendants' Rule 56(a)1 Statement asserts that that, despite Roy assigning Youmans to a new cell in direct response to the incident on July 13, Youmans remained in the "the same chronic discipline unit" and his "standing in the segregation program never changed." Defs.' L.R. 56(a)1 St. ¶ 20. Yet it is unclear whether

---

[9] As noted, Defendants provide the version of Administrative Directive 9.4 that was in effect in from 2009 to 2016.

"standing" equates with "status"—and Defendants do not explain what "status" Youmans was under for those eight days.[10] Moreover, Defendants do not argue in their Memorandum that Youmans suffered no change in conditions when he was moved to the different cell for eight days following the July 13 incident. Rather, they assert only that the "privilege limitations" during Youmans' time in the cell were reasonably related to the goal of prison security. Defs' Mem. 14, ECF 49-1.[11]

On this record—without the correct Administrative Directive and without a clear explanation from either party about how Youmans' conditions of confinement changed or did not change—I cannot properly analyze whether Youmans' conditions in the new cell were "reasonably related" to a legitimate governmental purpose other than punishment or "excessive in relation" to that purpose. *Milling*, 876 F.3d at 55.

Given these circumstances, I DENY without prejudice pursuant to Rule 56(e) the motion for summary judgment as to the Fourteenth Amendment substantive due process claim against Defendant Roy. Defendants may refile this motion, incorporating by reference any prior briefing and materials, and including the applicable version of Administrative Directive 9.4 as well as a clarification of Youmans' restrictive status and the nature of the change in his conditions of confinement during the relevant period.

---

[10] The Directive provides that individuals may be placed in Administrative Detention pending a disciplinary hearing. *Id.* at 7. However, Defendants have not explained if Youmans was put in that status.

[11] Roy's Declaration suggests that Youmans' conditions were the same during the eight-day period. *See* Roy Decl. 2-3. However, Roy references the outdated Administrative Directive, stating that individuals were housed at MWCI in "administrative segregation, restrictive housing, and chronic discipline status pursuant to Administrative Directive 9.4." Roy Decl. 2, ECF 49-9.

3.    **State Law Claims Against Defendants Roy and Fountain**

Youmans brings—but does not develop—three state law claims. Second Am. Compl. 4. Defendants argue these claims fail as a matter of law. Defs.' Mem. 20. I address each below.

a.    **Negligence**

Youmans first brings a negligence claim under Connecticut state law against Captain Roy in his individual capacity. *Id*. It is not clear what conduct he claims amounted to negligence.

Connecticut General Statute § 4-165 provides: "No state officer or employee shall be personally liable for damages or injury, not wanton, reckless or malicious, caused in the discharge of his or her duties or within the scope of his or her employment." Conn. Gen. Stat. § 4-165(a) (emphasis added).[12]

Therefore, state employees cannot be held liable for damages in their individual capacities for claims based solely on negligence and within the scope of their employment. *See* Conn. Gen. Stat. § 4-165(a); *Abrams v. Waters*, No. 3:17-CV-1659 (CSH), 2018 WL 691717, at *13 (D. Conn. Feb. 2, 2018) ("[I]f a corrections officer or prison official acts negligently, as opposed to wantonly or recklessly, in the scope of his employment, Conn. Gen. Stat. § 4-165(a) bars recovery on a negligence claim."); *Miller v. Egan*, 828 A.2d 549, 561-62 (Conn. 2003) (holding that "state employees may not be held personally liable for their negligent actions performed within the scope of their employment.").

---

[12] Instead, "[a]ny person having a complaint for such damage or injury shall present it as a claim against the state" under state law provisions relating to the Office of the Claim Commissioner. *See* Conn. Gen. Stat. § 4-165.

Because Youmans alleges that all actions were taken within the scope of Defendants'

employment, Defendants are statutorily immune from any claim for damages based solely on

negligence.

I therefore grant Defendants' motion for summary judgment on this claim.

### b.    False Imprisonment

Youmans next maintains that Defendants falsely imprisoned him in violation of

Connecticut state law. Second Am. Compl. 4.

"Claims for false imprisonment, whether brought under section 1983 or under state law,

are analyzed under state law." *Dinh v. Doe*, No. 3:24-CV-1042 (OAW), 2024 WL 3343006, at

*2 (D. Conn. July 9, 2024). "Under common law, there is no claim for false imprisonment

where the claim relates only to the conditions of confinement." *Id*. "The inquiry ends, at least

for purposes of the tort of false imprisonment, upon the finding that some form—any form—

of confinement was legally permitted." *Id*. (internal quotation marks and citation omitted).

Here, taking the facts in the light most favorable to him, Youmans does not challenge

the fact of his imprisonment, but rather he challenges the conditions of his imprisonment.

Therefore, this claim cannot survive, and Defendants' motion for summary judgment is

granted as to this claim.

### c.    Intentional Infliction of Emotional Distress

Finally, Youmans claims that Defendants subjected him to intentional infliction of

emotional distress. Second Am. Compl. 4.

To prevail on a state law claim for intentional infliction of emotional distress, Youmans

must show: "(1) that the actor intended to inflict emotional distress or that he knew or should

have known that emotional distress was the likely result of his conduct; (2) that the conduct

was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." *Appleton v. Bd. of Educ. of Town of Stonington*, 757 A.2d 1059, 1062 (Conn. 2000) (quoting *Petyan v. Ellis*, 510 A.2d 1337, 1342 (Conn. 1986)).

In his opposition to summary judgment, Youmans does not explain his theory of intentional infliction of emotional distress, but his supplement makes clear that this claim is tied to his confinement in segregation. ECF 65, at 7-8. But Youmans does not explain (or offer proof of) the "severity" of his emotional distress, which is required at this stage of the proceeding. *Appleton*, 757 A.2d at 1062.

For example, Youmans says only that he "suffered sever[e]ly" during his time in segregation. Youmans Decl. 6, ECF No. 64. But this attestation, along with Youmans' general underdevelopment of this claim, is insufficient at this stage of the case to show the severity of his emotional distress. "Connecticut courts have held that emotional distress is severe where it reaches a level which 'no reasonable person could be expected to endure.'" *Almonte v. Coca-Cola Bottling Co. of New York*, 959 F. Supp. 569, 575 (D. Conn. 1997) (quoting *Mellaly v. Eastman Kodak,* 597 A.2d 846, 848 (Conn. Super. Ct. 1991)).

Because Youmans has pointed to no evidence that he "suffered these symptoms to an extraordinary degree," *Almonte*, 959 F. Supp. at 576 (citing *Rosenberg v. Hebrew Home and Hosp.*, *Inc.* No. CV 333135, 1997 WL 35808, at *2 (Conn. Super. Ct. 1997)), Youmans's attestations, taken in the light most favorable to him, "do not support his claim of severe emotional distress," *id*.

I therefore grant Defendants' motion for summary judgment on this claim.

## IV.     <u>CONCLUSION</u>

I **DENY WITHOUT PREJUDICE** Defendants' motion for summary judgment, ECF No. 49, with respect to Youmans' constitutional claims, and **GRANT** the motion for summary judgment on Youmans's state law claims. Defendants may refile their motion for summary judgment with respect to Youmans' constitutional claims on or before **October 27, 2025.**

**SO ORDERED.**

New Haven, Connecticut
September 26, 2025

/s/*Sarah F. Russell*
SARAH F. RUSSELL
United States District Judge